Matter of Garratt-Chant v Gentiva Health Servs. (2020 NY Slip Op 00658)





Matter of Garratt-Chant v Gentiva Health Servs.


2020 NY Slip Op 00658


Decided on January 30, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 30, 2020

529029

[*1]In the Matter of the Claim of Cecelia Garratt-Chant, Now Known as Cecelia Garratt- Chant-Hardy, Claimant,
v
Gentiva Health Services et al., Appellants, et al., Respondent. Workers' Compensation Board, Respondent.

Calendar Date: January 9, 2020

Before: Garry, P.J., Mulvey, Aarons, Pritzker and Colangelo, JJ.


Gitto & Neifer, LLP, Binghamton (Jason M. Carlton of counsel), for appellants.
Letitia James, Attorney General, New York City (Steven Segall of counsel), for Workers' Compensation Board, respondent.



Garry, P.J.
Appeal from a decision of the Workers' Compensation Board, filed October 4, 2018, which ruled, among other things, that apportionment applied to claimant's workers' compensation award.
In 1998, claimant sustained a work-related injury to her lower back and filed a claim for workers' compensation benefits. Her claim was established for an occupational disease of the back. In 2010, claimant sustained another work-related injury, this time to her neck, and filed a second claim for workers' compensation benefits, which was later established. In 2011, liability for the 1998 back claim was transferred to the Special Fund for Reopened Cases (hereinafter the Special Fund).
Extended proceedings were conducted in connection with the 2010 neck claim to address various issues, including the degree of claimant's disability, her loss of wage-earning capacity and her attachment to the labor market. During the course of these proceedings, claimant's counsel raised the issue of claimant's back injury, for which she was still receiving treatment, and noted possible apportionment with the Special Fund. Consequently, a Workers' Compensation Law Judge (hereinafter WCLJ) reopened the 1998 back claim and directed that it travel with the 2010 neck claim for a hearing on permanency.
In December 2012, the WCLJ conducted such hearing, but discontinued it with respect to the 1998 back claim to allow the Special Fund to obtain its own independent medical examination (hereinafter IME) on permanency. Thereafter, claimant and the employer's workers' compensation carrier (hereinafter collectively referred to as the carrier) deposed three physicians on the issue of permanency in connection with the 2010 neck claim. After considering the medical opinions of these physicians, the WCLJ issued a reserved decision that addressed permanency only as it related to the 2010 neck claim.[FN1] The WCLJ found, among other things, that claimant had a 55% permanent medical impairment of the neck and a 50% loss of wage-earning capacity due to such impairment.[FN2] The WCLJ classified claimant as having a permanent partial disability under Workers' Compensation Law § 15 (3) (w) and awarded her wage loss benefits for a period not to exceed 350 weeks. Upon review, the Workers' Compensation Board modified the WCLJ's decision and found that claimant had a 40% permanent impairment of the neck with a loss of wage-earning capacity of 50%. Accordingly, it awarded her wage loss benefits for a period not to exceed 300 weeks, based on a loss of wage-earning capacity of 50% (see Workers' Compensation Law § 15 [3] [w] [ix]).
In February 2016, a hearing on both claims was conducted before a WCLJ. Based on the additional medical evidence that was presented regarding the degree of claimant's disability due to her back injury after the date of classification and her need for lumbar fusion surgery, claimant moved to reopen the 2010 neck claim based on a change in condition. The WCLJ did not make any finding with respect thereto and directed the carrier to continue to pay wage loss benefits in the same sum with respect to the 2010 neck claim, as previously awarded. In August 2016, the WCLJ closed the case on the 2010 neck claim based on prior findings.
In July 2017, claimant submitted a request for further action based on a change in medical condition warranting reclassification. In the request, claimant sought to have the 2010 neck claim travel with the 1998 back claim so that a hearing could be conducted on the issues of permanency and apportionment. The WCLJ ordered the parties to produce IMEs on current medical issues and continued the case for classification and apportionment. Thereafter, the WCLJ directed the parties to submit the deposition transcripts of orthopedic surgeons Robert Karpman and Stewart Kaufman, continued the case for the carrier to obtain an IME on apportionment and permanency, and "encouraged [the parties] to obtain permanency opinions that consider the whole person with an apportionment of the disability between the claims."
Kaufman limited his examination of claimant to her lumbar spine and, utilizing the 2012 New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity, assessed permanency under table 11.1, class 4, severity G. During his deposition, he opined that claimant's overall disability should be apportioned 80% to the 2010 neck claim and 20% to the 1998 back claim. Karpman, on the other hand, examined both claimant's lumbar and cervical spine and, utilizing the same guidelines, assessed permanency under table 11.1, class 3, severity B. During his deposition, he opined that claimant's overall disability should be apportioned 65% to the 2010 neck claim and 35% to the 1998 back claim.
In January 2018, the WCLJ conducted a permanency and apportionment hearing addressing both the 1998 back claim and the 2010 neck claim. Thereafter, the WCLJ issued a reserved decision finding that claimant had a permanent partial disability under Workers' Compensation Law § 15 (3) (w), with an overall permanent medical impairment of 60% and a loss of wage-earning capacity of 70%. With respect to apportionment, the WCLJ credited Karpman's testimony and found that 65% should be apportioned to the 2010 neck claim and 35% to the 1998 back claim. The WCLJ reclassified the 2010 neck claim and extended wage loss benefits for a period not to exceed 375 weeks based on the loss of wage-earning capacity of 70% (see Workers' Compensation Law § 15 [3] [w] [vii]). The carrier sought Board review and a panel of the Board affirmed the WCLJ's decision. This appeal by the carrier ensued.
The carrier contends that the Board improperly shifted a portion of the liability for the 1998 back claim, for which the Special Fund is responsible, to it by increasing claimant's loss of wage-earning capacity from 50% to 70%, apportioning liability 65% to the 2010 neck claim and 35% to the 1998 back claim, and extending the cap on the number of weeks of wage loss benefits from 300 to 375. The Board, however, has continuing jurisdiction over matters before it that includes "the power of modification or change with respect to former findings, awards, decisions or orders relating thereto, as in its opinion may be just" (Matter of Christensen-Mavrigiannakis v Nomura Sec. Intl., Inc., 175 AD3d 1748, 1754 [2019] [internal quotation marks and citations omitted]; see Workers' Compensation Law § 123; Matter of Connolly v Covanta Energy Corp., 172 AD3d 1839, 1840 [2019]). Notably, this extends to determinations involving the reclassification of injuries (see Matter of Lloyd v New Era Cap Co., 80 AD3d 1016, 1018 [2011]; Matter of McNeil v Geary, 105 AD2d 539, 540-541 [1984]; Matter of Buehler v Rose, 12 AD2d 670, 670-671 [1960]).
Here, the Board reclassified claimant's 2010 neck claim after considering the medical evidence establishing that her continuing back and neck problems left her with an overall permanent medical impairment of 60% and a loss of wage-earning capacity of 70%. The Board was entitled to resolve the conflicting medical opinions in making this determination (see Matter of Czechowski v MCS Remedial Servs., 175 AD3d 1759, 1761 [2019]; Matter of Jewett v New York City Tr. Auth., 174 AD3d 1254, 1254 [2019]). Moreover, although the carrier's share of liability was increased as a result of the Board's decision, this was because it was based on claimant's overall disability, considering both the 1998 back claim and 2010 neck claim together, not just the 2010 neck claim that was the subject of the Board's prior decision. Inasmuch as the Board exercised its continuing jurisdiction in such as manner as it deemed just to compensate claimant based on her complete state of disability (see Workers' Compensation Law § 123), we find no reason to disturb its decision.
Mulvey, Aarons, Pritzker and Colangelo, JJ., concur.
ORDERED that the decision is affirmed, without costs.



Footnotes

Footnote 1: When the proceedings resumed before the WCLJ, the Special Fund appeared without an IME.

Footnote 2: Although a portion of the WCLJ's decision states that claimant had a 55% loss of wage-earning capacity, this appears to have been a typographical error as the WCLJ's analysis makes it clear that he found that claimant had a 50% loss of wage-earning capacity.